FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 27, 2020

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EDGARDO S,[1] Plaintiff, vs. ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, Defendant. | No. 2:19-cv-00254-MKD ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c)14.

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 20, 2015, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging an amended

disability onset date of December 28, 2014.[2]  Tr. 111, 227-33; Tr. 234-35.  The

---

[2] Plaintiff previously applied for disability benefits on January 5, 2012, Tr. 210-19,

which was denied on September 19, 2012, Tr. 145-51.  Plaintiff did not appeal the

denial.

ORDER - 6

applications were denied initially and on reconsideration.  Tr. 152-55; Tr. 158-63.

Plaintiff appeared before an administrative law judge (ALJ) on November 15,

2017.  Tr. 28-73.  At the hearing, Plaintiff requested a closed period of disability

from December 28, 2014 until his return to work on February 8, 2017.  Tr. 10, 30.

On July 2, 2018, the ALJ denied Plaintiff's claim.  Tr. 7-27.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through December 31, 2018, did not

engage in substantial gainful activity from December 28, 2014 through February 8,

2017.  Tr. 13.  At step two, the ALJ found that Plaintiff has the following severe

impairments:  congestive heart failure, obesity, personality disorder, and anxiety

disorder.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform

light work with the following limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds
> frequently.  He can stand and walk for a total of 2 hours a day.  He
> can sit for 8 hours in an 8-hour workday with normal breaks.  He can
> occasionally climb, balance, and stoop.  He can frequently kneel,
> crouch, and crawl.  He can have no concentrated exposure to
> vibrations and hazards.  He can have no exposure to pulmonary
> irritants.  He is limited to simple, routine tasks.  He can have
> occasional interaction with the public, coworkers, and supervisors.
> He should work in a stable and regular work environment.

ORDER - 7

Tr. 15.

At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work. Tr. 19. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as production assembler, electronics worker, cannery worker, final assembler, bench hand, and table worker. Tr. 20-21. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of December 28, 2014, though the date of the decision. *Id.*

On May 21, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-three analysis; and

2. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 14 at 2.

# DISCUSSION

## A. Step-Three

Plaintiff contends that the ALJ erred by finding that Plaintiff's chronic heart failure did not meet or equal Listing 4.02. ECF No. 14 at 5-9. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 416.925, 404.1525. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 758 F.3d at 1176. If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*,

180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 416.925(d), 404.1525(d).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099. However, " '[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.' " *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical

equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listing 4.02. Tr. 13-14. To satisfy Listing 4.02, the claimant must satisfy both the Paragraph A and Paragraph B criteria, while on a regimen of prescribed treatment, and with the symptoms and signs described in Listing 4.00(D)(2) including: cardiomegaly or ventricular dysfunction, demonstrated by medically acceptable imaging; symptoms and signs such as fatigue, weakness, dyspnea, cough, chest discomfort at rest or with activity, cardiac arrhythmias resulting in palpitations, lightheadedness or fainting, peripheral edema, rales, rapid weight gain, ascites, increased jugular venous distention or pressure, or hepatomegaly. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02. Paragraph A requires either 1) medically documented systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or 2) diastolic failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure). *Id.* Paragraph B requires one of the following: 1) Persistent symptoms

of heart failure which very seriously limit the ability to independently initiate,

sustain, or complete activities of daily living in an individual for whom a

medical consultant, preferably one experienced in the care of patients with

cardiovascular disease, has concluded that the performance of an exercise test

would present a significant risk to the individual; or 2) Three or more separate

episodes of acute congestive heart failure within a consecutive 12-month period,

with evidence of fluid retention from clinical and imaging assessments at the

time of the episodes, requiring acute extended physician intervention such as

hospitalization or emergency room treatment for 12 hours or more, separated by

periods of stabilization; or 3) Inability to perform an exercise tolerance test at a

workload equivalent to 5 METs or less due to: a. Dyspnea, fatigue, palpitations,

or chest discomfort; or b. Three or more consecutive premature ventricular

contractions (ventricular tachycardia), or increasing frequency of ventricular

ectopy with at least 6 premature ventricular contractions per minute; or c.

Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic

blood pressure or the preceding systolic pressure measured during exercise due

to left ventricular dysfunction, despite an increase in workload; or d. Signs

attributable to inadequate cerebral perfusion, such as ataxic gait or mental

confusion. *Id.*

The ALJ found Plaintiff did not meet the Paragraph A criteria of the listing because he did not have an ejection fraction below 30 percent during periods of stability; rather, the low ejection fractions only occurred during an episode of acute heart failure, and when Plaintiff became stable, his ejection fractions were well above 30 percent. Tr. 13 (citing Tr. 842, 965). The ALJ did not address the other prong of Paragraph A, regarding whether Plaintiff had left ventricular end diastolic dimensions greater than 6.0 cm. Additionally, the ALJ found Plaintiff did not meet the B criteria of the listing, because his symptoms did not prevent him from completing daily activities, he has not had three or more episodes of heart failure in a 12 month period, and he has not been found unable to perform exercise tolerance tests. Tr. 13-14.

Plaintiff contends he may have met the criteria set forth in Listing 4.02A(1), and the ALJ erred by not consulting a medical expert to determine if Plaintiff met the listing. ECF No. 14 at 5-9. While Plaintiff does not argue error in the finding he did not have an ejection fraction of 30 percent or less during a period of stability, he contends he may have had systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm, but states the evidence is not able to interpreted by a lay individual and an expert is needed. ECF No. 14 at 7. Plaintiff also contends the ALJ erred in not considering his obesity

when determining if Plaintiff equaled Listing 4.02.  ECF No. 14 at 8.  The Court finds the ALJ did not error at step three, and any error would be harmless.

First, Plaintiff bears the burden of establishing he meets a listing.  *Burch*, 400 F.3d at 683.  The evidence does not demonstrate Plaintiff meets the Paragraph A criteria of the listing.  While a single decision maker reviewed the evidence at the initial level, on reconsideration, Dr. Hale considered Listing 4.02, but found Plaintiff did not meet a listing and was capable of light work.  Tr. 120-23.  Dr. Garfield, an examining doctor, also opined Plaintiff was capable of sustaining full-time work, with some limitations.  Tr. 969-70.  Although Dr. Garfield did not explicitly address any listings, his finding that Plaintiff can sustain eight-hour workdays is inconsistent with Plaintiff meeting a listing.

An electrocardiogram showed Plaintiff had sinus tachycardia with left ventricular hypertrophy, Tr. 102, 614.  Plaintiff cites to other treatment records that indicate abnormal findings, but there is no evidence the left ventricular end diastolic dimensions were greater than 6.0 cm.  ECF No. 14 at 7 (citing Tr. 420, 498, 575, 682, 737, 842-44).  As Plaintiff does not set forth evidence demonstrating Plaintiff meets this prong of Paragraph A, and Plaintiff did not challenge the ALJ's analysis of the other prong, Plaintiff has not met his burden of demonstrating he meets the Paragraph A criteria of Listing 4.02.

Second, while Plaintiff contends the ALJ had a duty to consult an expert, ECF No. 14 at 7, the ALJ did not have a duty to further develop the record. The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

Here, the ALJ did not find that the record was inadequate to allow for evaluation of the evidence. While Plaintiff argues an additional medical opinion was needed to determine if Plaintiff met a listing because the findings are complex, Plaintiff does not point to any ambiguous evidence. ECF No. 14 at 7. Plaintiff cites to evidence that demonstrates abnormal left ventricular findings, but none indicate Plaintiff's left ventricular end diastolic dimensions were greater than 6.0 cm, and there are no opinions that indicate Plaintiff meets or equals a listing. *Id.* As such, the ALJ's duty to further develop the record was not triggered.

Third, any error in the ALJ's Paragraph A analysis would be harmless because Plaintiff does not challenge the ALJ's analysis of the Paragraph B criteria. *Molina,* 674 F.3d at 1115. To meet Listing 4.02, both the Paragraph A and Paragraph B criteria must be met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02. Plaintiff challenges only the ALJ's Paragraph A analysis. ECF No. 14 at 5-9. As such, any argument regarding the Paragraph B analysis is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). However, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record.

There is no evidence that any of the three prongs of Paragraph B are satisfied. A medical consultant did not opine Plaintiff could not perform an exercise test, Plaintiff did not have three or more separate episodes of acute congestive heart failure in a 12-month period, and there is no evidence Plaintiff could not perform an exercise tolerance test at a workload equivalent to five METs or less. *See* Tr. 19, 577, 683, 713-14. As Plaintiff did not present any evidence

that demonstrates that he meets the Paragraph B criteria, any error in the ALJ's analysis of the Paragraph A criteria would be harmless.

Lastly, Plaintiff argues the ALJ erred in not considering whether he equals Listing 4.02, when considering his obesity. ECF No. 14 at 8-9. While the ALJ must consider if the medical findings demonstrate the claimant's conditions are equal in severity to a listing, general functional problems are not enough to establish disability at step three. *Tackett*, 180 F.3d at 1100. Further, the claimant bears the burden of establishing his impairments equal the criteria of a listed impairments. *Burch*, 400 F.3d at 683.

The ALJ found Plaintiff's conditions are not equal to a listing and considered Plaintiff's obesity in making that determination. Tr. 13-14. Plaintiff argues that his chronic heart failure symptoms, EKG and other test results, and obesity "could equal Listing 4.02." ECF No. 14 at 8. However, Plaintiff does not set forth any specific argument as to how his impairments are of equal severity to Listing 4.02, when neither Paragraph A nor Paragraph B of the listing are met.

In summary, the ALJ did not error in his step three analysis. Further, any error would be harmless. As such, Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 14 at 9-15. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 16.

In support of his finding that Plaintiff's symptom complaints were not entirely consistent with the evidence, the ALJ cited five reasons. Tr. 16-18. Plaintiff challenges only the ALJ's conclusion that Plaintiff's activities of daily living were inconsistent with Plaintiff's symptom complaints. ECF No. 14 at 9-15. Because Plaintiff failed to challenge the other four reasons cited by the ALJ, any challenges are waived, and the Court may decline to review them. *See Carmickle*, 533 F.3d at 1161 n.2. However, upon review, the Court finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to support his finding. Tr. 16-18.

First, the ALJ found the objective evidence during the relevant period was inconsistent with Plaintiff's reports of disabling limitations due to his heart condition and mental health conditions. Tr. 16-18. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other

symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ noted that as to Plaintiff's heart condition, EKGs showed Plaintiff's ejection fraction improved over time. Tr. 17 (citing Tr. 742, 842, 965). At a consultative exam, Plaintiff had a generally normal exam, including no edema, rales, or signs of heart failure, and, no evidence of unexplained fatigability, though he had mildly restricted lumbar and cervical range of motion. Tr. 17 (citing Tr. 965-69). At a January 2017 exam, Plaintiff again had a normal cardiac exam. Tr. 17 (citing Tr. 991). As to his mental impairments, the ALJ noted that although Plaintiff had abnormal behavior, memory, and concentration at a psychological exam, Tr. 975, Plaintiff otherwise had generally normal mental status exams, Tr. 17-18 (citing Tr. 896-97, 991), 794 The DSHS facilitator observed on one occasion that Plaintiff had a fair memory and could describe his symptoms in detail, Tr. 334, though on another occasion he relied on his friend to provide details for him, Tr. 368.

In summarizing evidence of his fatigue, Plaintiff relies primarily on treatment records outside of the relevant period, and records that re-state Plaintiff's self-report, rather than objective evidence. ECF No. 14 at 10-11. The ALJ reasonably found the objective evidence is inconsistent with Plaintiff's symptom complaints.

Second, the ALJ found Plaintiff's improvement in his conditions was inconsistent with his symptom claims. Tr. 16-17. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). As discussed *supra,* Plaintiff's ejection fraction improved with time. Tr. 16-17, 742, 842, 965. The ALJ reasoned that the evidence demonstrated that along with improvement in his ejection fraction, Plaintiff overall had gradual improvement in his heart condition and stabilized cardiac findings. Tr. 18. In 2014, Plaintiff's heart condition required emergency room visits though his symptoms improved, Tr. 596, and hospitalization on his alleged onset date, Tr. 785. Plaintiff underwent left radial coronary angiography and left heart catheterization in December 2014. Tr. 805. Plaintiff did not generally complain of cardiac symptoms at appointments in 2015, Tr. 744, 828, his condition was noted as stable and improving, Tr. 909, he reported not wearing a life vest in case of cardiac rest, though it was recommended, Tr. 744, and he reported engaging in activities including "throwing a log," walking a dog, and gardening, Tr. 828. Plaintiff did not exhibit objective signs of cardiac

symptoms at multiple exams in 2016 and 2017. Tr. 967, 969, 991. Plaintiff's cardiac symptoms were noted to be well-controlled with medication. Tr. 969.

Plaintiff also reported improvement in his mental health symptoms with time and reported his mental health symptoms responded well to medication. Tr. 896, 909, 1035, 1041. Though Plaintiff exhibited some mental health symptoms in 2016, he later reported his anxiety was significantly improved and he was able to return to work by early 2017. Tr. 18 (citing Tr. 1030, 1034, 1040). Treatment records also indicate he had "notable symptomatic improvement with only one week of sertraline." Tr. 897. The ALJ reasonably found that Plaintiff's improvement in his symptoms was inconsistent with his symptom complaints. This was a clear and convincing reason to reject Plaintiff's symptom claims.

Third, the ALJ found Plaintiff's minimal treatment for his mental health conditions inconsistent with his claims. Tr. 17. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was

not seeking treatment).  When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Although he alleged significant mental health symptoms, including difficulty getting along with others, Plaintiff sought minimal mental health treatment.  Tr. 17. He was encouraged to seek psychiatric care, but he did not seek further care during the relevant period.  *Id.* (citing Tr. 1033, 1035, 1041).  Plaintiff does not offer any arguments as to why he did not seek additional care.  Although the records indicate Plaintiff may have been uninsured for a period of time, he was repeatedly given resources and assistance to obtain insurance and mental health services, and Plaintiff did later obtain insurance coverage yet still did not seek ongoing mental health care.  Tr. 571, 750, 1035, 1379.  This was a clear and convincing reason to reject Plaintiff's symptom claims.

Fourth, the ALJ found the longitudinal record, including Plaintiff's activities, did not support Plaintiff's symptom claims. Tr. 18. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680. Additionally, the ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ reasoned that the longitudinal records show steady improvement in Plaintiff's heart condition, improvement with medication, and minimal mental health treatment. Tr. 18. Further, during the relevant period, Plaintiff reported lifting weights, bicycling, playing with his dog, gardening, bicycling, and serving as caregiver to his fiancée. Tr. 17-18. The ALJ noted that while Plaintiff testified

he could lift only four pounds, the records indicated he enjoyed weightlifting.[3]  Tr. 16, 985.  Treatment records support the ALJ's conclusion as they indicate Plaintiff was walking his dog, bicycling, throwing a log, gardening, and raking in 2015.  Tr. 828, 896.  He reported using shopping and gardening as stress relief in 2016.  Tr. 1034.  In January 2017, it was noted Plaintiff is his fiancée's caregiver, and he had been lifting "40 pound weights."  Tr. 985.

Plaintiff argues the ALJ was not specific enough his findings, and the record lacks enough information about the activities to find they are inconsistent with Plaintiff's allegations.  However, the reported activities are inconsistent with Plaintiff's allegations of disability, and further, any error is harmless, as the ALJ's other supported reasons for discounting Plaintiff's symptom complaints constitute clear and convincing reasons to discount Plaintiff's symptom claims.  Although Plaintiff argues the ALJ's rejection of Plaintiff's statements lead to an error at step five, ECF No. 14 at 16, the ALJ's RFC need only include those limitations found

_____

[3] The hearing transcript indicates Plaintiff testified he could lift up to 40 pounds. Tr. 46.  However, Plaintiff also testified he was told not to lift over 20 pounds, Tr. 46, and he later testified he could lift ten pounds, Tr. 68.  As such, it is unclear if there is a typographical error as to Plaintiff's testimony regarding the maximum weight he could lift being forty or four pounds.

credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*.  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).  A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).  As the ALJ properly rejected Plaintiff's statements, the ALJ did not error at step five by not

ORDER - 27

including additional limitations in the RFC based on Plaintiff's reported fatigue.

Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED March 27, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 28